**REVERSE; DISSOLVE and REMAND and Opinion Filed December 17, 2020**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-19-01520-CV
_____

**JOHNNY WIMBREY, WIMBREY GLOBAL INC., WIMBREY TRAINING SYSTEM, WIMBREY WORLDWIDE MINISTRIES, ROYAL SUCCESS CLUB LLC, AND ROYAL LIFE, Appellants**
**V.**
**WORLDVENTURES MARKETING, LLC, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-06212-2019**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Reichek

Johnny Wimbrey and five entities controlled by him[1] appeal the trial court's temporary injunction order enjoining them from disparaging appellee WorldVentures Marketing, LLC, disclosing WorldVentures' "confidential" information, and recruiting WorldVentures' representatives and other specific categories of people. On appeal, appellants complain the order fails to comply with

---

[1] Those entities are Wimbrey Global Inc., Wimbrey Training System, Wimbrey Worldwide Ministries, Royal Success Club LLC, and Royal Life.

Texas Rule of Civil Procedure 683 and is unsupported by the evidence. In addition, they argue the disparagement paragraph is an improper prior restraint on their free speech rights. For reasons set out below, we reverse the injunction order.

**Factual Background**

WorldVentures is a multi-level marketing company that sells vacation club memberships through a network of independent distributors called "representatives." Unlike traditional brick-and-mortar businesses, WorldVentures invests its marketing and sales efforts into these independent representatives, who earn money by selling memberships to consumers and from the production of their "downline" networks made up other representatives that they enrolled in WorldVentures.

To become a representative, a person had to agree to WorldVentures Policies and Procedures, which included several provisions that defined the relationship and set out the standards of permissible business conduct and practices. Relevant to this appeal, the policies and procedures included non-solicitation and non-disparagement provisions and limitations on using WorldVentures' confidential information.

Under the non-solicitation provision, a WorldVentures representative could participate in other multilevel marketing business ventures or opportunities but was precluded from using or disclosing any of WorldVentures' confidential information, trade secrets, or goodwill, including the identity of other representatives. Additionally, the representative agreed that, during the term of the agreement and

for one year following termination, cancellation, or expiration of the agreement, he would not "recruit other WorldVentures Representatives, customers, employees, consultants or vendors for any other network marketing business, other than those [he] both personally sponsored and enrolled into WorldVentures." "Recruit" is defined as "actual or attempted solicitation, enrollment, encouragement, or effort to influence in any other way, either directly or through a third party."

Under the "Disruptive Conduct" clause, representatives agreed to not "disparage, demean, or make negative remarks" about the company, its representatives and customers, the Compensation Plan, or its founders, directors, officers, or employees, contractors, vendors and/or suppliers. WorldVentures, in its sole discretion, could decide whether a representative's behavior was "disruptive" to normal business or his conduct damaging to the company's image or reputation, and if so, could discipline the representative. That discipline included suspension or termination.

Finally, the agreement prohibited representatives from using any of WorldVentures' "confidential information" provided to them for any purpose except WorldVentures business. This confidential information included, but was not limited to, "Downline Activity (Genealogy) Reports,[2] identity and contact information of Representatives and Customers, a Representative's personal and/or

---

[2] The multilevel marketing network structure is referred to as the "genealogy tree."

group volume, Representative rank, and other information needed to run the Representative's business. . . ." Upon demand by the company or cancellation or termination of the agreement, representatives agreed to return all confidential information in their possession, custody or control.

In April 2009, Wimbrey enrolled in WorldVentures as a representative and later enrolled the five appellant companies. Over the next ten years, he achieved the company's highest rank and was paid some $11 million. In 2019, appellants left WorldVentures and joined another multilevel marketing company, iBüümerang.

WorldVentures received complaints and evidence that Wimbrey was recruiting WorldVentures representatives to work for iBüümerang and, in November 2019, WorldVentures sued appellants for breach of contract and tortious interference with existing contracts, alleging they were attempting to raid its salesforce in violation of its Policies and Procedures. In particular, WorldVentures alleged Wimbrey urged his social media followers, many of whom were WorldVentures representatives, to "run" from abusive relationships and urged them to "make moves." Additionally, it alleged Wimbrey contacted a particular representative, warned her about "major problems" at WorldVentures and "its alleged 'bullsh*t,'" and sent her an iBüümerang recruitment video. WorldVentures also asserted that Wimbrey blasted a Zoom message to its representatives to "plug" an upcoming iBüümerang announcement that promised a "frenzy" of new recruits. In their

petition, WorldVentures sought a temporary injunction to enjoin appellants from violating the disparagement, confidentiality, and recruitment provisions.

The trial court conducted a hearing on WorldVentures' request for a temporary injunction at which Wimbrey and a company representative testified. The hearing focused on the non-solicitation provision of the contract and Wimbrey's alleged violations of that provision. After hearing the evidence, the trial court issued an amended order granting the temporary injunction. In paragraph 8 of the order, the trial court enjoined appellants from (i) recruiting WorldVentures representatives, customers, employees, consultants or vendors for any network marketing business (including iBüümerang), other than those representatives personally sponsored and enrolled into WorldVentures by appellants; (ii) directly or indirectly disclosing or disseminating confidential information to any other person or entity, directly or indirectly providing access to password protected areas of WorldVentures website containing confidential information, or using confidential information to attempt to influence or induce any representative, customer or employee of WorldVentures to cease or alter their business relationship with WorldVentures; and (iii) unlawfully disparaging WorldVentures or the company's products, Compensation Plan, or its founders, directors, officers, or employees.

Appellants brought this accelerated appeal challenging the order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4); Tex. R. App. P. 28.1.

**Applicable Law**

–5–

The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a trial on the merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). A party asking for a temporary injunction seeks extraordinary equitable relief. *Wilson N. Jones Mem'l Hosp. v. Huff,* 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied). The extraordinary equitable remedy of an injunction must be carefully regulated and confined to proper cases. *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 743 (Tex. App.—Dallas 2011, no pet.). The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion. *Butnaru,* 84 S.W.3d at 204; *Huff,* 188 S.W.3d at 218.

Texas Rule of Civil Procedure 683 requires every order granting a temporary injunction to state the reasons for its issuance, be specific in terms, and describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained. TEX. R. CIV. P. 683. The purpose of the rule is to ensure that parties are adequately informed of the acts they are enjoined from doing and why they are enjoined from doing them. *El Tacaso*, 356 S.W.3d at 744. Thus, the order must be specific and legally sufficient on its face and not merely conclusory, and it must be definite, clear and precise as possible. *See id*. The trial court must set out in the temporary injunction order the reasons the court deems it proper to issue the injunction, including the reasons why the applicant will suffer injury if the

injunctive relief is not ordered. *Id.* The requirements of rule 683 are mandatory and must be strictly followed, even if a sound reason for granting relief appears elsewhere in the record. *Id.* at 745. If a temporary injunction order fails to comply with the mandatory requirements of rule 683, it is void. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam).

**Analysis**

We begin with the non-solicitation provision in paragraph 8(i) of the injunction order, which provides as follows:

> i. The Restrained Parties may not recruit WorldVentures Representatives, customers, employees, consultants, employees, consultants, or vendors for any other network marketing business (including iBuumerang), other than those they both personally sponsored and enrolled into WorldVentures. "Recruit" means actual or attempted solicitation, enrollment, encouragement, or effort to influence in any other way, either directly or indirectly through a third party. The Restrained Parties may not assist any other person or entity in performing acts that are prohibited by this injunction.

Appellants argue the provision fails to comply with rule 683 because (1) it does not identify the "off limits" representatives and other categories of people and (2) the terms, "encouragement" and "effort to influence in any other way," are vague. Additionally, they claim the provision is unsupported by the evidence. In response, WorldVentures asserts the provision is sufficiently specific and is supported by the evidence. It argues that the trial court did nothing more than order appellants "not to do, pending trial . . . what they *agreed* not to do while they were associated with WorldVentures (and for one year thereafter)."

–7–

Neither party disputes that paragraph 8(i) is taken almost verbatim from section 5.2 of the Policies and Procedures agreed to by appellants at the time they enrolled with WorldVentures.[3] But section 5.2 contained a time restriction: one year following termination, cancellation, or expiration of the agreement, as acknowledged by WorldVentures in its brief. It is undisputed that appellants have been separated from WorldVentures for more than a year, and the record shows they have been enjoined from recruitment efforts for more than a year.[4]

Appellate courts are prohibited from deciding moot controversies. *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). This prohibition is rooted in the separation of powers doctrine in the Texas and United States constitutions that prohibits courts from rendering advisory opinions. *Id*. A case becomes moot if at any stage there ceases to be an actual controversy between the

---

[3] WorldVentures Policies and Procedures provided:

5.2 Prohibited Recruiting

. . . During the term of this Agreement and a period of one (1) year following termination, cancellation, or expiration of the Agreement, Representatives may not recruit other WorldVentures Representatives, customers, employees, consultants or vendors for any other network marketing business, other than those they both personally sponsored and enrolled into WorldVentures. "Recruit" means actual or attempted solicitation, enrollment, encouragement, or effort to influence in any other way, either directly or through a third party.

[4] The parties' briefing in this case was completed in May 2020. The appeal, however, was not submitted for decision until November 10, 2020, ten days before the one-year anniversary of the original injunction order, which was subsequently amended on December 2, 2020.

parties. *Id.* When a temporary injunction becomes inoperative due to a change in the status of the parties or the passage of time, the issue of the injunction's validity is also moot. *Id.* An appellate court decision about a temporary injunction's validity under such circumstances would constitute an impermissible advisory opinion. *Id.*

In the *Jones* case, the trial court issued a twofold injunction. *Nat'l Collegiate Athletic Ass'n v. Jones*, 982 S.W.2d 450, 451 (Tex. App.—Amarillo 1998), *rev'd*, 1 S.W.3d 83 (Tex. 1999). The first part enjoined the NCAA and Texas Tech from enforcing any rule or bylaw that would prevent the plaintiff from participating as a member of the Texas Tech football team until judgment in the cause was rendered. 982 S.W.2d at 451. The second part enjoined the NCAA from enforcing its Restitution Rule. *Id.* The court of appeals concluded that the injunction had no further operative effect when the football season ended, and the injunction became moot at that time. *Id.* at 452. The court set aside the injunction and dismissed the appeal. *Id.*

The supreme court, however, reversed the decision after concluding the second part of the injunction was not moot. 1 S.W.3d at 88. The court did not address the issue of mootness as to the first part of the injunction, as acknowledged by the dissent. *See id.* (Abbott, J. dissenting) ("The Court does not assert that there is a live controversy as to [the first] portion of the injunction.").

Just as the ending of the football season in the *Jones* lawsuit mooted the first portion of the injunction, the contractual provision upon which the non-solicitation

restriction in the injunction is based has expired, and appellants have been enjoined from any recruiting efforts for at least a year.[5]  Consequently, we conclude there is no longer a live controversy between the parties as to this portion of the injunction. *Id*.

Moreover, we note that even though the injunction does not contain a time limitation (other than that it is in effect until the date of trial), it is based solely upon the parties' contract and cannot grant more relief than the contract permits.  To the extent the injunction could be read to extend past the one-year deadline, it would be an abuse of discretion because it would be enjoining appellants from engaging in activities that the contract does not prohibit.  *See Republican Party v. Dietz*, 940 S.W.2d 86, 93 (Tex. 1997) (explaining that even if plaintiff succeeds on contract claims, it cannot get more with injunction than would have been entitled to under contract); *Harbor Perfusion v. Floyd*, 45 S.W.3d 713, 718 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (trial court abuses discretion if enters injunction granting more relief than plaintiff is entitled to, such as by enjoining defendant from engaging in lawful activities).

For the reasons set out above, we conclude the issue of the validity of paragraph 8(i), the non-solicitation provision, is moot.  *See Jones*, 982 S.W.2d at

---

[5] We note that the original trial setting was July 27, 2020, which would have occurred within the one-year period.  During the pendency of the appeal, the trial date was reset to February 2021, according to online court documents.

452; *see cf. Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) ("Here, the parties entered into a contract providing for noncompetitive period following cessation of employment and such period is now past which causes the issue [of extending the applicable period of the non-compete agreement] to become moot.") We note, however, that although the time period in the agreement has expired rendering this provision of the injunction moot, the damages issue pending in the trial court is not rendered moot.

Appellants also challenge the injunction provisions enjoining disparagement and disclosure of confidential information. Paragraph 8(iii) of the injunction provides as follows:

> The Restrained Parties shall not unlawfully disparage WorldVentures or the company's products, Compensation Plan, or its founders, directors, officers, or employees.

Appellants contend this restriction is (1) an unconstitutional prior restraint on their free speech rights, (2) fails to comply with the requirements of rule 683, and (3) is unsupported by the evidence. Because we agree that the provision fails to comply with rule 683, we need not address the other issues.

As stated previously, rule 683 requires the trial court to explain in the injunction why each provision was required and to set forth in its findings the irreparable harm WorldVentures will suffer without the provision. *See El Tacaso*, 356 S.W.3d at 744 (citing *City of Corpus Christi v. Friends of the Coliseum,* 311 S.W.3d 706, 708 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) ("When a

temporary injunction is based in part on a showing that the applicant would suffer irreparable harm if the injunction is not issued, Rule 683 requires the order to state precisely *why* the applicant would suffer irreparable harm.") (emphasis in original)); *Byrd Ranch, Inc. v. Interwest Sav. Ass'n,* 717 S.W.2d 452, 454 (Tex. App.—Fort Worth 1986, no writ) (necessary for the trial court to give the reasons why injury will be suffered if the temporary relief is not ordered); *cf. In re Office of Attorney Gen.,* 257 S.W.3d 695, 697 (Tex. 2008) (orig. proceeding) (per curiam) (temporary restraining orders that did not meet requirements of rule of civil procedure 680 that such orders "define injury they were designed to prevent" and "explain why such injury would be irreparable" were void) (citing *InterFirst Bank San Felipe v. Paz Const. Co.,* 715 S.W.2d 640, 641 (Tex.1986)).

Here, the trial court's findings focus almost exclusively on the non-solicitation provision enjoining recruitment of representatives and other categories of people. By way of example, the trial court found the evidence tended to support that appellants "breached the contract by violating the non-solicitation covenants" by directly or indirectly recruiting representatives to join iBüümerang and (2) appellants were involved in "facilitating" recruitment of representatives by other representatives. The court found the non-solicitation covenants protect WorldVentures' goodwill, confidential information, and other valuable business interests, including the company's relationship with its salesforce; interference with even one distributor could have "damaging effects" to a distributor's network of

associated representatives and customers and "imminently threaten far-reaching injury that is difficult to discover and fully assess;" and solicitation and recruitment efforts can destabilize an organization. The court also found that the evidence showed appellants had targeted representatives and "entire teams" of representatives, explained the means of recruitment (social media), and explained that appellants were widely known within WorldVentures' salesforce and could "exploit that experience and exposure to recruit and solicit Representatives whether previously know or unknown and whether or not they had previously worked together or even were known by them. But nothing in the order mentions disparagement or, more importantly, provides any justification for the injunction on disparagement. To the extent WorldVentures attempts to justify the disparagement provision on the basis that it is "drawn directly from the Policies and Procedures in the contract" that appellants agreed to, we are unpersuaded. The provision clearly applied to appellants only while they were representatives of WorldVentures and not after their separation from the company. Because we conclude the order does not specify the reasons for enjoining disparagement of WorldVentures, this provision fails to comply with rule 683 and is therefore void.

We likewise agree that paragraph 8(ii), the confidentiality provision, lacks the necessary specificity required by rule 683 and is void. Paragraph 8(ii) provides as follows:

The Restrained Parties shall not, on their own behalf, or on behalf of another person, partnership association, corporation or other entity: a) directly or indirectly disclose or disseminate confidential information to any other person or entity; b) directly or indirectly provide access to password protected areas of the WorldVentures website containing confidential information; or c) use confidential information to attempt to influence or induce any Representative, customer, or employee of WorldVentures to cease or alter their business relationship with WorldVentures.

Appellants argue this provision fails to meet the rule's specificity requirement because it does not contain any definition of "confidential information." WorldVentures agrees that the provision itself does not define the term but, relying on *McCaskill v. National Circuit Assembly*, No. 05-17-01289-CV, 2018 WL 3154616, at *3 (Tex. App.—Dallas June 28, 2018, no pet.) (mem. op.), argues the phrase is sufficiently explained elsewhere in the injunction. Specifically, WorldVentures argues a reference to "confidential information" in paragraph 3 is sufficient to meet the rule. Paragraph 3 provides:

3.      Without this injunction, WorldVentures will suffer a probable, imminent, and irreparable injury in the interim before a final trial on the merits. The non-solicitation covenants protect WorldVentures's goodwill, confidential information, and other valuable business interests, including by protecting the company's relationship with its salesforce of independent contractors ("Representatives") and customers, and information about them.

In *McCaskill*, appellants complained the particular paragraph enjoining the disclosure of confidential information, paragraph 21, did not define the term with enough specificity to give them notice of the documents they were restrained from using. 2018 WL 3154616, at *3. But an earlier portion of the order, paragraph 3,

did contain the definition of confidential information found in the nondisclosure agreement and the definition contained "very specific language." *Id.* The court determined that, reading the court's order as a whole, it was clear that "confidential information" as used paragraph 21 had the meaning ascribed to it in paragraph 3. *Id.* The court modified the order to specify in paragraph 21 that "confidential information" had the definition set out in paragraph 3. *Id.*

Unlike *McCaskill*, the injunction order here does not contain any definition of "confidential information" elsewhere in the order. Paragraph 3 merely includes a list of items that the court found the covenants were intended to protect. By failing to define, explain, or otherwise describe what constitutes WorldVentures's "confidential information," the order leaves appellants to speculate about what particular information or item would constitute "confidential information" and thus fails to provide necessary notice as to how to conform their conduct. *See Ramirez v. Ignite Holdings, Ltd.*, No. 05-12-01024-CV, 2013 WL 4568365, at \*4 (Tex. App.—Dallas Aug. 26, 2013, no pet.) (mem. op.) (order that failed to define "Proprietary Information/Trade Secrets" with enough detail to give appellants adequate notice of acts they were retrained from doing was impermissible).

Finally, we note that WorldVentures has generally argued that the non-disparagement and confidentiality provisions should not be considered separately from the non-solicitation provision because these provisions are prohibited "largely because they are tools used to violate the overriding prohibition against recruiting

other WorldVentures Representatives." But the one-year time limit to recruit has expired, undermining any such justification on this basis. We sustain the second and third issues.

Because of our resolution of the issues in this appeal, we reverse the trial court's order granting the temporary injunction and dissolve the temporary injunction. We remand this case to the trial court for further proceedings.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

191520F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHNNY WIMBREY, WIMBREY
GLOBAL INC., WIMBREY
TRAINING SYSTEM, WIMBREY
WORLDWIDE MINISTRIES,
ROYAL SUCCESS CLUB LLC,
AND ROYAL LIFE, Appellants


No. 05-19-01520-CV     V.


WORLDVENTURES
MARKETING, LLC, Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-06212-
2019.
Opinion delivered by Justice
Reichek; Justices Molberg and
Nowell participating.

 

In accordance with this Court's opinion of this date, the December 2, 2019 amended temporary injunction of the trial court is **REVERSED**, the injunction is **DISSOLVED**, and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellants JOHNNY WIMBREY, WIMBREY GLOBAL INC., WIMBREY TRAINING SYSTEM, WIMBREY WORLDWIDE MINISTRIES, ROYAL SUCCESS CLUB LLC, AND ROYAL LIFE recover their costs of this appeal from appellee WORLDVENTURES MARKETING, LLC. The cash deposit in lieu of surety bond in the amount of $500 is **ORDERED** released to Parker L. Graham on behalf of WorldVentures Marketing, LLC.


Judgment entered this 17th day of December 2020.


–17–